UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**TRIGINAL D. JACKSON,**

    Plaintiff,

v.                                      No. Civ. 09-0285 JCH/RHS

**CHIEF OF POLICE,
DEPUTY CHIEF,
K.P. SANDY, MDC MEDICAL,
K D LOVATO,
CITY OF ALBUQUERQUE,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on pro se Plaintiff Triginal D. Jackson's (i) *Motion for Additional Parties*, filed May 29, 2009 (Doc. 18); (ii) *Motion for Attorney Fees*, filed October 16, 2009 (Doc. 68)[1]; *Motion for Attorney Fees*, filed October 16, 2009 (Doc. 69); *Motion for Entry of Default*, filed October 16, 2009 (Doc. 70); *Motion for Entry of Default*, filed October 16, 2009 (Doc. 71); *Motion for Legal Remedy*, filed December 11, 2009 (Doc. 84); *Motion for Summary Judgment*, filed January 21, 2010 (Doc. 87); *Amended Motion for Summary Judgment*, filed January 27, 2010 (Doc. 89); and *Request for CM/ECF*, filed February 10, 2010 (Doc. 90). Because he is proceeding *in forma pauperis* ("IFP"), the Court also reviews Mr. Jackson's Complaint under 28 U.S.C. § 1915(e)(2)(B) (providing that the Court must dismiss a complaint submitted by a plaintiff proceeding IFP "at any time if the Court determines that...the action...is

---

[1] Mr. Jackson seeks an award of $50/hour in "attorney fees" for time he has spent on his case. Pro se plaintiffs cannot collect fees that would have been payable to their attorneys had they been represented by counsel. *See UFCW Local 880-Retail Food Emp. Joint Pension Fund v. Newmont Mining Corp.*, No. 08-1423, 2009 WL 2902565, *5 (10th Cir. Sept. 11, 2009). A party cannot receive an attorney fee award if it has not actually incurred attorneys' fees. Thus, even if the Court were not dismissing Mr. Jackson's Complaint for failure to state a claim, it would deny his motions for attorney fees.

frivolous or malicious; [] fails to state a claim on which relief may be granted, or [] seeks monetary relief against a defendant who is immune from such relief"). Having reviewed Mr. Jackson's submissions, the record in this case and in other related cases that Mr. Jackson has filed in this Court, and the relevant law, the Court will deny Mr. Jackson's motions and dismiss his Complaint with prejudice because it would be futile to allow an opportunity to amend.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This is the first of three cases that Mr. Jackson filed related to his arrest on March 6, 2009 for allegedly possessing an open container of alcohol in a motor vehicle. Mr. Jackson's Complaint names six defendants: the Chief and Deputy Chief of the Albuquerque Police Department; "Sandy" -- the APD officer who arrested him on March 6; MDC Medical; KD Lovato; and the City of Albuquerque. *See* Complaint at 1. The bulk of Plaintiff's Complaint regards Officer Sandy. Mr. Jackson states that Officer Sandy stopped the van in which he was a passenger and asked if there were "any open containers" in the van. Complaint at 2. When Mr. Jackson said "no," Officer Sandy asked Mr. Jackson to get out of the van, saw "a empty beer can," accused Mr. Jackson of lying, and "wrote [a] ticket [that Mr. Jackson] refused to sign." *Id.* Officer Sandy told Mr. Jackson he "would be going to jail," and Mr. Jackson "told him [he] would sign" but Officer Sandy said "to [sic] late and took [him] to jail." *Id.* The Complaint is devoid of any factual allegations mentioning MDC Medical, the Deputy Chief, Ms. Lovato, or the City of Albuquerque.

On August 4, 2009, The Honorable Bruce Black, who was previously assigned to this case, granted MDC's motion to dismiss Mr. Jackson's claims against it, with prejudice, for failure to state a claim. *See* Doc. 35. However, Judge Black denied Ms. Lovato's motion to dismiss because, in Mr. Jackson's response to Ms. Lovato's motion, Mr. Jackson alleged that Ms. Lovato,

who is a clerk for the Metropolitan Court, "refused to release [Mr. Jackson] because [he] did not want to give her [his] phone number." Doc. 17 at 1.[2]  According to Mr. Jackson, Ms. Lovato told Mr. Jackson that the court required a phone number for release orders and that "any number would do," and when Mr. Jackson refused to give her his number, she ordered an officer to return Mr. Jackson to "booking." *Id.*  Mr. Jackson states that he was released when an officer explained to Ms. Lovato that "there was no legal ground to hold" Mr. Jackson. *Id.* at 2.

Judge Black rejected Ms. Lovato's argument that she was entitled to quasi-judicial immunity on the basis that she was simply doing her job in obtaining phone numbers that the metropolitan court required in its release orders.  He found that it was unclear whether, if the state court had ordered Mr. Jackson's release, Ms. Lovato had discretion to continue holding Mr. Jackson on the basis that he refused to provide his telephone number.  Mr. Jackson has not moved to amend his Complaint to add the allegations regarding Ms. Lovato.

Mr. Jackson includes two lines in his Complaint about the Chief of Police: "I have contacted APD Chief of Police about the action of its officer.  RTO, Internal Affiars [sic], none of these people have attempted a prevent [sic] defense allowing these officers action to continue." Complaint at 5.

## II.  APPLICABLE LEGAL STANDARD

In *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008), the Tenth Circuit set forth the standards that district courts should apply in resolving a motion to dismiss brought under rule 12(b)(6) of the Federal Rules of Civil Procedure in a § 1983 cause of action.  It held that a

---

[2] Mr. Jackson's Complaint alleged "background investagator [sic] refused to release me without a phone number."  Complaint at 2.  But Ms. Lovato's name was never mentioned in the Complaint, and she is a court clerk, not an investigator.

plaintiff bears the burden "to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)).  Thus, a claim must not only state a plausible ground for relief, but it must also inform the defendants of the actual grounds of the complaint against them.  *Id*.  In cases in which government actors are also sued in their individual capacities and the plaintiff alleges violation of his constitutional rights, "it is particularly important...that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Id.* at 1250 (emphasis in original).   The Court applies these same standards in its review under § 1915(e)(2) to determine whether Mr. Jackson has stated a cognizable claim.  *See Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007).

The core inquiry under any § 1983 action "is whether the plaintiff has alleged an actionable constitutional violation."  *Becker v. Kroll*, 494 F.3d 904, 914 (10th Cir. 2007).  Because Mr. Jackson proceeds pro se, the Court liberally construes his Complaint.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  Even a pro se plaintiff, however, is required to make factual allegations to establish plausibility.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  In determining whether a complaint states a claim upon which relief may be granted, The Court takes a two-step approach.  First, it "identif[ies] the [conclusory] allegations in the complaint that are not entitled to the assumption of truth" and disregards them.  *Id.* at 1951.  Then it "consider[s] the factual allegations in [the] complaint to determine if they

plausibly suggest an entitlement to relief." *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 1949.

### III.  ANALYSIS

**A.  Mr. Jackson's Complaint must be dismissed for failure to state a claim**.

Because he is proceeding IFP, the Court will begin with a *sua sponte* review of Mr. Jackson's Complaint under § 1915(e)(2)(B). Count I alleges a state-law claim for "False Imprisonment" against Officer Sandy.[3] In support, Mr. Jackson states that, although "state law allows a citizen to be in jail for not signing ticket," he does not believe it should be a criminal offense to refuse to sign a paper. Complaint at 3. He again states that, when he changed his mind about refusing to sign the ticket, Officer Sandy told him, "to [sic] late you are going to jail." *Id.*

New Mexico law defines false imprisonment as "'intentionally confining or restraining another person without his consent and with knowledge that he has no lawful authority to do so.'"

---

[3] The Court notes that Officer Sandy was not initially served because, when Mr. Jackson filled out the summons, he only put Sandy's last name and no other information with which to identify him even though Mr. Jackson had possession of documents showing Officer Sandy's full name and badge number. *See* Doc. 12 at 1-4, 12. Service of the summons at the main "Law Enforcement Center" on Roma where Sandy was employed was refused because the specific officer could not be identified with only the name "Sandy." *See id.* at 1-3. Mr. Jackson requested that the Court "re-issue summons" for Officer Sandy, Doc. 60 at 2, but Magistrate Judge Scott denied the motion because Mr. Jackson, who was not incarcerated, had not complied with Rule 4 of the federal and local rules of procedure, *see* Doc. 64. *See* D.N.M. LR-Civ. 4.1 (requiring the party to "prepare the summons"); *DiCesare v. Stuart*, 12 F.3d 973, 980 (10th Cir. 1993) (stating, in case where plaintiff proceeded IFP, that "[a] pro se litigant is still obligated to follow the requirements of Fed. R. Civ. P. 4"). The Court reissued the summons on October 23, 2009, but, as he had done with the Chief of Police, Mr. Jackson listed the City's main address on "Civic Plaza" as the place of service and requested service of the summons only on the City Attorney. Thus the summons and Complaint were never personally served on Officer Sandy or on the Chief of Police as required by FED. R. CIV. P. 5(b). *See* Doc. 86. Therefore, even if the Court were not dismissing Mr. Jackson's Complaint for failure to state a claim, it would still deny Mr. Jackson's motions for default or summary judgment against these unserved Defendants.

*Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1207 (10th Cir. 2006) (quoting *Romero v. Sanchez*, 119 N.M. 690, 895 P.2d 212, 215 (1995)).  Mr. Jackson alleges that Officer Sandy issued him a citation for having an open container of alcohol in a motor vehicle and acknowledges that it is lawful for an officer to arrest a person who refuses to sign a citation.  Therefore, despite Mr. Jackson's personal opinion that state law should not allow an officer to arrest an individual for refusing to sign a citation, Mr. Jackson has failed to a claim for false imprisonment against Officer Sandy.  Mr. Jackson's arrest was constitutionally valid because Officer Sandy had probable cause to believe that Mr. Jackson had committed a criminal offense in the Officer's presence, namely both possession of an open container in a motor vehicle and refusal to sign a citation. Officer Sandy was under no duty to give Mr. Jackson a third chance to change his mind about signing the citation, and Mr. Jackson's later willingness to sign the citation did not destroy the Officer's initial probable cause for arrest, especially considering the uncontested open container violation.  *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").

      The Court takes judicial notice of the fact that Mr. Jackson sued the City of Albuquerque on these same facts in *Jackson v. State*, 09cv698 BB/CEG.  *See Amphibious Partners, LLC v. Redman*, 534 F.3d 1357, 1361-62 (10th Cir. 2008) (noting that a district court may take judicial notice of its own decisions and records in another case involving the same parties).  In that case, Magistrate Judge Carmen Garza found that Mr. Jackson had failed to allege any facts to show how the City had violated his constitutional rights, but gave him an opportunity to amend his Complaint.  *See* No. 09cv668, Doc. 3 at 2-3 (D.N.M. Aug. 11, 2009).  In response, Mr. Jackson

argued that Officer Sandy worked for APD, and that his arrest "was the grounds for false imprisonment." *See id.*, Doc. 4 at 2. In an Order subsequently dismissing Mr. Jackson's case, Judge Black held that, "[a] police officer arresting Mr. Jackson is not, in and of itself, a deprivation of one of Mr. Jackson's federal rights." *See id*, Doc. 5 at 3. Judge Black dismissed Mr. Jackson's Complaint against the City for failure to state a claim, noting that dismissal is proper when allowing a plaintiff to amend his complaint would be futile. *Id.* at 4. Mr. Jackson appealed that ruling, *see id.*, Doc. 10 at 1, and he has no right to relitigate the same claim against the same party in a different federal case simultaneously. *See Crowley Cutlery Co. v. United States*, 849 F.2d 273, 279 (7th Cir. 1988) ("the question whether a litigant should be able to litigate the same issue at the same time in more than one federal court is an easy one--he should not be"). Insofar as Mr. Jackson's claim in Count I or any other count may be interpreted as one against the City, it should be dismissed in its entirety because he has already brought his claims against the City regarding these facts in another suit in this Court.

On January 22, 2010, the Tenth Circuit dismissed Mr. Jackson's appeal as frivous and affirmed Judge Black's dismissal of Mr. Jackson's complaint against the City, County, and State regarding the same March 6, 2009 arrest that is the subject of his Complaint in this case. *See Jackson v. State*, No. 09-2215, 2010 WL 227569, *3-*6 (10th Cir. Jan. 22, 2010). The Tenth Circuit noted that Mr. Jackson "failed to make any allegations of wrongdoing with respect to any named or otherwise identified person, with the exception of Albuquerque police officer Keith Sandy (who is not a named party defendant) . . . ." *Id.* at *4. The Tenth Circuit addressed "Mr. Jackson's constitutional tort claims of false arrest, malicious prosecution, false imprisonment, and related claims," noting that "an essential element of each of those torts is a lack of probable cause." *Id.* at *5. It then found that Mr. Jackson's arrest was supported by probable cause to

7

arrest him for his admitted open container violation, rendering unsupportable all of his constitutional claims.  Therefore, Count I shall be dismissed against all Defendants, with prejudice, for failure to state a claim because, as the Tenth Circuit has already ruled, amendment would be futile.

Count II is a state law claim against Officer Sandy for "false light."  Complaint at 3.  In support of this claim, Mr. Jackson states, "I did inform officer I would sign.  He wrote refusal on ticket." *Id.*  This allegation does not support a claim for "false light," which is a subset of the tort of invasion of privacy, and which requires proof of a specific false statement of fact made to the public that results in highly objectionable publicity.  *See Andrews v. Stallings*, 119 N.M. 478, 492-93, 892 P.2d 611, 625-26 (Ct. App. 1995).  Mr. Jackson admits in the Complaint that he did, in fact, refuse to sign the ticket before his arrest.  Officer Sandy's statement of "refusal" was, therefore, a true statement, even though Mr. Jackson later allegedly attempted to withdraw his refusal.  Thus, Count II shall be dismissed with prejudice because amendment would be futile.

Count III alleges: "malicious prosecution/false charge, denial of bail."  Complaint at 4.  In support, he states that he was "placed in jail for not signing[.] This was my 1th [sic] Amend. right, 9th Amend. right, 5th, 14th, 13th." *Id.*  As a matter of law, in light of Mr. Jackson's allegations that he was arrested on a charge of having an open container of alcohol in a motor vehicle and that he initially refused to sign the citation, which resulted in Officer Sandy lawfully arresting him under state law, none of Mr. Jackson's facts state a claim against any Defendant for malicious prosecution or for violation of any constitutional rights.  *See Jackson v. State*, No. 09-2215, 2010 WL 227569, *5-*6; *Atwater*, 532 U.S. at 354.  Further, the exhibits attached to Mr. Jackson's Complaint establish that no bail or bond was initially required in Mr. Jackson's criminal case related to his March 6, 2009 arrest.  *See* Complaint, Att. 2.  Thus he cannot state a claim for

8

"denial of bail," and Count III shall be dismissed with prejudice because amendment would be futile

The only potential claim remaining is one against Ms. Lovato for false imprisonment or violation of civil rights based on the allegations Mr. Jackson made in his response to Ms. Lovato's motion to dismiss.  None of the counts in Mr. Jackson's Complaint specifically refer to Ms. Lovato and, as noted *supra*, the Complaint is devoid of factual allegations mentioning Ms. Lovato.  The Court has fully examined the allegations that Mr. Jackson made in his responsive filings and the exhibits he has attached to his Complaint, as well as the exhibits regarding his arrest and incarceration in his criminal case that the City submitted in *Jackson v. State*, No. 09cv350 JCH/KBM, the third case involving this incident.  Upon this review, the Court concludes that the undisputed facts indicate that Mr. Jackson has failed to state a cognizable federal or state law claim against Ms. Lovato.

Ms. Lovato is a Metropolitan Court clerk who filled out the court documents authorizing Mr. Jackson's release.  *See* Complaint, Att. 1.  The state court judge assigned to Mr. Jackson's criminal case docketed an authorization to release Mr. Jackson at 3:00 p.m. on March 7, 2009.  *See* No. 09cv350 Doc. 14, Ex. C.  However, an authorization to release on a docket sheet is not the same as an order to release.  The Order was not issued until the clerk filled out the paperwork for the judge and filed it.  Both the Order Setting Conditions of Release and Bond and the Release Order have spaces in which Ms. Lovato was to write  Mr. Jackson's address and telephone number.  *See* Complaint, Atts. 2, 3.  Mr. Jackson admits that, when Ms. Lovato asked for his telephone number so that she could fill out the Release Order, he refused to give it to her, saying that he "did not want to give her [his] phone number." Doc. 17 at 1.  Ms. Lovato told Mr. Jackson that the court required a telephone number for release orders and that "any number would do," and

9

when Mr. Jackson continued to refuse to cooperate, she asked an officer to return Mr. Jackson to "booking." *Id.*  Mr. Jackson does not allege that he did not *have* a telephone number to give to Ms. Lovato – he states that he just did not "want" to give it to her.  In fact, the record shows that Mr. Jackson ultimately gave Ms. Lovato an apparently false number that includes only the last four digits of the actual phone number that he possessed both before and after his release.  *See* Complaint, Att. 3 (demonstrating that Mr. Jackson gave Ms. Lovato a number where he could be reached as "505-431-1138" on March 7, 2009); Doc. 3 at 1 (Mr. Jackson's motion to proceed IFP in this case where he listed his actual phone number as "505-340-1138" on March 24, 2009); No. 09cv0094 JAP/ACT Doc. 2 at 1 (Mr. Jackson's motion to proceed IFP in an unrelated case where he listed his actual phone number as "505-340-1138" on January 29, 2009).  Accepting as true the allegation that Ms. Lovato temporarily ordered Mr. Jackson's return to "booking" sometime after 3:00 p.m. and then had him brought back in so that she could finish filling out his release paperwork, the record shows that Ms. Lovato completed and filed the Order releasing Mr. Jackson at 5:28 p.m. on March 7, 2009, and he was released the same afternoon that the state-court judge authorized his release.  *See* Complaint, Att. 2; Doc. 52 at 2 (stating as a stipulated fact that Mr. Jackson was released on March 7, 2009).  Mr. Jackson was not entitled to release until the paperwork for his release was completed.  Mr. Jackson's responses and the record show that the very limited delay in completing his paperwork was caused by Mr. Jackson's initial refusal to cooperate in giving information to Ms. Lovato instead of anything unlawful that Ms. Lovato did.  Mr. Jackson has stated no facts indicating that Ms. Lovato violated his constitutional rights or falsely imprisoned him.  *See Iqbal*, 129 S. Ct. at 1949.

     Because Mr. Jackson's Complaint fails to provide sufficient facts to state a viable claim for violation of Mr. Jackson's constitutional rights or of state law against any named Defendant, Mr.

Jackson's Complaint must be dismissed under § 1915(e)(2)(B)(ii).  The Complaint is dismissed with prejudice because he has had numerous opportunities to fully state his claims in the three cases he has filed regarding the March 6-7, 2009 incident, because the Tenth Circuit has rejected most of his claims, and because further amendment would be futile.  *See Robbins*, 519 F.3d at 1248-49; *Fuentes v. Chavez*, No. 08-2162, 314 Fed. Appx. 143, 145 (10th Cir. Feb. 25, 2009) ("There is a limit to how many bites even a pro se plaintiff can have at the apple....")

**B.  Mr. Jackson should not be given an opportunity to amend his Complaint.**

Mr. Jackson seeks to amend his Complaint to add additional APD officers as Defendants. *See* Doc. 18 at 1.  Rule 15(a) of the Federal Rules of Civil Procedure provides that, after an answer has been filed, a party may amend his complaint only "with the opposing party's written consent or thecourt's leave," and "the court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  Mr. Jackson did not include with his motion to amend a proposed amended complaint, in violation of D.N.M. LR Civ.-15.1.  Further, Mr. Jackson's motion indicates that he is attempting to improperly add claims and defendants not associated with his March 6-7, 2009 arrest and incarceration.  *See* Doc. 18; *Brown v. Uphoff*, No. 96-8114, 114 F.3d 1198, 1997 WL 313970, *3 (10th Cir. June 10, 1997) (affirming denial of motion to amend in part "because it raised issues and asserted claims unrelated to the original complaint").  Justice does not require amendment, and the Court will deny the motion to amend.

Mr. Jackson filed a premature notice of appeal in this case on September 1, 2009.  *See* Doc. 43.  While the case was on appeal, Mr. Jackson filed seventeen motions, notices, and requests. The Tenth Circuit dismissed Mr. Jackson's appeal on October 22, 2009, *see* Doc. 75, and denied his motion to reinstate his appeal on November 6, 2009, *see* Doc. 81. Because the Court concludes that Mr. Jackson has failed to state a cognizable claim, the Court will deny Mr. Jackson's other

pending motions as moot.

**IT IS ORDERED** that Mr. Jackson's motions (Docs. 18, 68, 69, 70, 71, 84, 87, 89, and 90) are DENIED and his Complaint is d ismissed with prejudice for failure to state a claim.

_____
UNITED STATES DISTRICT JUDGE